GUARANTY CONSTRUCTION COMPANY ET AL., PROSECUTORS, v. TOWN OF BLOOMFIELD, CHARLES H. DEMAREST ET AL., RESPONDENTS.

Decided July 21, 1933.

Before Justice PARKER at chambers, pursuant to statute.

For the prosecutors, *Simon M. Seley.*

For the respondents, *Edward C. Pettit.*

PARKER, J. The writ brings up an amendment by the municipal body of Bloomfield to the general zoning ordinance of

that town. From the zoning map in evidence I gather that in the extreme southeast corner of the town's territory, bounded east by Newark, and southwest by East Orange, there is a section of some twenty-five blocks restricted as "medium volume residential" with five or six more blocks restricted as "small volume residential." Except for a hundred foot strip of "large volume business" on the south side of Bloomfield avenue, and two parts of blocks adjoining that strip marked "medium volume business" the whole area bounded north by Bloomfield avenue, south by East Orange, east by Newark and west by La France avenue is zoned as residential.

Defendant Pierdominici owns a lot forty-nine and one half by one hundred feet on the southeast corner of First avenue and North Fifteenth street, in the extreme southerly angle of the zoned territory, and two thousand feet from the nearest business on Bloomfield avenue. He wished to build a row of five stores on this four thousand nine hundred and fifty square feet, and permit being refused by the building inspector, he applied to the board of adjustment for a nonconforming permit. There was a hearing, and a number of the neighbors protested, but the board recommended the town council to grant the permit. A resolution to that effect was lost on September 19th, 1932. On the 30th, Pierdominici began again with another application, which, in turn, was rejected by the inspector, approved by the board of adjustment, and lost before the council on October 17th. On November 21st the Council reconsidered the matter and concurred in the recommendation of the board and on the 23d permit issued. The prosecutors promptly obtained a writ of *certiorari* from the late Chief Justice Gummere, but no return was ever made to the writ. However, on January 17th, 1933, rule was entered in this court, by consent, setting aside the action of the board and the concurrence of the council. No copy of this rule is before me, but I take the fact from the stipulation of attorneys.

While that first *certiorari* was pending, the council, without notice to prosecutors other than the statutory advertisement, proceeded to introduce and pass, at the meetings of December 5th and 19th, the amendment now brought up, and which

simply adds to the medium business zone, the nearest tract of which is over half a mile away (scaling the distance on the zoning map), a lonely lot of one hundred feet depth, and forty-nine and one half feet front, on a corner and surrounded on all sides by the residential zone.

This historical sketch of the matter is interesting, suggestive, and to me persuasive. It is a fundamental theory of the zoning scheme that it shall be for the general good, to secure reasonable neighborhood uniformity, and to exclude structures and occupations which clash therewith. The statute (*Pamph. L.* 1928, *p.* 696) provides that the territory be divided into districts of such number, shape and area as may be deemed best suited to carry out the purposes of the act. But this amendment to the general ordinance does not create a district: it merely undertakes to add one isolated lot to a district the nearest part of which is half a mile away, and in the midst of a totally inconsistent neighborhood.

Taken by itself, this ordinance gives the impression of a fundamental disregard of the statute. Taken in connection with its antecedents, that impression is confirmed and intensified. I think the amendment is utterly unreasonable, and that it was enacted in disrespect of this court and apparently to work out a new way of attaining an unworthy and illegal result.

The amending ordinance and all proceedings in connection therewith will be set aside, with costs.

As to the suggestion that one of the prosecutors owns stores already situated on the opposite corner, it does not appear how long they have been there or that they had not been built before any zoning took effect. No doubt there is jurisdiction in the board of adjustment to make an exception of the forty-nine foot lot in the manner marked out in the statute; but such a proceeding as this ordinance is not justified by that jurisdiction.