DOMINICK DeVITO, PROSECUTOR, v. ELMER PEARSALL, BUILDING INSPECTOR OF THE BOROUGH OF RUMSON, BOARD OF ADJUSTMENT OF THE BOROUGH OF RUMSON AND THE BOROUGH OF RUMSON, DEFENDANTS.

Submitted May 17, 1935—Decided July 22, 1935.

Before Justices PARKER, CASE and BODINE.

For the prosecutor, *Theodore D. Parsons.*

For the defendants, *William A. Stevens.*

The opinion of the court was delivered by

CASE, J.   Prosecutor conducts a nursery business at his property on West street, borough of Rumson.   His lot

measures two hundred and fifty feet front by one hundred and fifty feet deep. On it is a greenhouse one hundred feet long, twelve feet wide and six feet four inches high, used by him in that business. He desires to replace the greenhouse by one that will be one hundred and thirty-eight feet eight and one-half inches long, twenty-eight feet three inches wide and twelve feet high. His application for a building permit was refused by the borough building inspector and, on an appeal, by the board of adjustment of the borough. The writ brings up those determinations and also the borough zoning ordinance. The zoning ordinance, adopted August 22d, 1929, and amended August 14th, 1930, places prosecutor's property in a residence zone wherein a building used for industrial, manufacturing or commercial purposes (with certain irrelevant exceptions) is prohibited. The ordinance further provides that:

"No lot hereafter may be used and no building or part thereof hereafter may be erected, constructed, reconstructed, moved, repaired, extended, converted, altered, maintained, or used excepting in conformity with the provisions of this ordinance."

Prosecutor's present structure and his business conducted thereat are located contrary to the terms of the ordinance but they have been in continuous existence since before the passage of the ordinance, and therefore constitute a nonconforming use and may be lawfully maintained. *Frank J. Durkin Lumber Co.* v. *Fitzsimmons*, 106 *N. J. L.* 183. There is no dispute about that.

The question is whether prosecutor, having the right to continue his present structure and to restore or repair it in the event of partial destruction (*Pamph. L.* 1928, *ch.* 274, § 11; *Provident Institution for Savings* v. *Castles*, 11 *N. J. Mis. R.* 773), is further entitled to replace it with the proposed building. The application to the building inspector rather evasively puts an alternative request for a permit "to erect or alter." The construction is in no true sense an alteration. The desired operation is aptly described by the building inspector as tearing down and building anew. Not

only building anew but on a very much larger scale, for a simple calculation will show that the cubic content of the proposed structure would be approximately six times, and the ground space more than three times, that of the present. It is argued that the entire lot is, and has been, used for the business and that the prosecutor is protected from interference in that use; but there is no effort toward interrupting any use that has heretofore existed. The ordinance, as now applied, is directed towards the attributes and uses of the building and is within the general purpose of the Zoning act. *Pamph. L.* 1928, *ch.* 274, *supra.* No use of the grounds, as such, is involved.

Carried to its logical result the argument made for the prosecutor is that if a non-conforming use is once established on a property, that use may be extended and enlarged to the length and breadth of the entire plot without restraint as to height and depth. We do not understand that to be the law. In *Conaway* v. *Atlantic City,* 107 *N. J. L.* 404, it was said of two ordinances there under review that "the spirit of both ordinances is to restrict any increase of any non-conforming use," and the decision turned upon that view. The statutory authority for non-conforming buildings and their uses already cited (*Pamph. L.* 1928, *ch.* 274, § 11) provides:

"Any non-conforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the building so occupied, and any such structure may be restored or repaired in the event of partial destruction thereof."

The care with which the legislature limited the application of the principle of non-conforming use and the restrictive language with which it authorized restoration and repair are, we think, cogent manifestations of an intent opposite to the wide expansion for which argument is now made.

The Zoning act, *supra,* in section 5, under the caption of "Purposes in View," provides that:

"Such regulations shall be made in accordance with a comprehensive plan and designed for one or more of the

following purposes: To lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health, morals or the general welfare; to provide adequate light and air; to prevent the overcrowding of land or buildings; to avoid undue concentration of population. Such regulation shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality."

Arguing thereon prosecutor contends that a zoning ordinance must have direct relationship to, and promote, the general welfare, health and safety of the citizens and that the provisions of the Rumson ordinance prohibiting the extension or enlargement of a building bear no such direct relationship. The argument rests largely upon citations of cases dealing with the law as it stood before the constitutional amendment, as *State* v. *Nutley,* 99 *N. J. L.* 389 (quoted in the Durkin Lumber Company opinion, *supra,* in demonstration of the law as it was at that earlier period), and *Ignaciunas* v. *Risley,* 98 *Id.* 712, which was the title of the Nutley case in the Supreme Court. If a municipality is to be held within the rigid limitation of the law as it then was, the whole procedure of the constitutional amendment and enabling legislation thereunder was pointless. The amendment, article IV, paragraph 5 of the constitution (*Pamph. L.* 1928, *p.* 821), broadly provides that:

"The legislature may enact general laws under which municipalities, other than counties, may adopt zoning ordinances limiting and restricting to specified districts and regulating therein, buildings and structures, according to their construction, and the nature and extent of their use, and the exercise of such authority shall be deemed to be within the police power of the state. Such laws shall be subject to repeal or alteration by the legislature."

In construing the intent and effect of the zoning statute passed thereunder we must read section 5, *supra,* in conjunction with section 3, which, under the caption of "General Purpose," provides that:

"Any municipality * * * may, by a zoning ordinance, limit and restrict to specified districts * * * buildings and structures according to their construction, and the nature and extent of their use, and the exercise of such authority, subject to the provisions herein contained, shall be deemed to be within the police power of the state. * * * The authority conferred by this act shall include the right to regulate and restrict the * * * location and use and extent of use of buildings and structures for trade, industry, residence, or other purposes."

The lack of municipal authority to create residence zones and, with reasonable regard for an actually existing status, to shield those areas from the intrusion of commercial structures was, as we apprehend, one of the evils which the electorate conceived to exist in the old law and purposed to remedy in the amendment and the ancillary legislation. That the amendment authorizes statutory action competent to give that power we have no doubt; and by the rules of statutory construction we reach the conclusion that the legislature deemed appropriate municipal action to be in the interest of the general welfare and that it gave due authority therefor in the statute under discussion. It is by no means fanciful to believe that the general welfare of a community is materially served by preserving a neighborhood to the uses to which it may most advantageously be placed.

The territory zoned as "residential" is such in fact. The neighborhood environment is not comparable to that in *Gabrielson* v. *Glen Ridge*, 13 *N. J. Mis. R.* 142. *Lamb* v. *A. D. McKee, Inc.*, 10 *Id.* 649, and *Dickinson* v. *Plainfield*, 13 *Id.* 260, are sufficiently different, either in facts or in holding, to make unnecessary a more particularized distinction.

The building inspector and the board of adjustment were acting within their ordinance and statutory powers in refusing the permit. The ordinance accords with the statute and the statute with the constitution.

The writ of *certiorari* will be dismissed, with costs.