RUTH AMON, PROSECUTRIX, v. THE CITY OF RAHWAY ET AL, DEFENDANTS.

Argued October 6, 1936—Decided March 5, 1937.

Before Justices PARKER and LLOYD.

For the prosecutrix, *Samuel Koestler.*

For the defendants, *William V. Herer.*

The opinion of the court was delivered by

PARKER, J. This is a *certiorari* to bring up the refusal of the board of adjustment of the city of Rahway, after hearing, to permit the prosecutrix to build a new building adjoining her present building and to be devoted to the same use as the present building, contrary to the terms of the local zoning ordinance.

For the prosecutrix it is urged that the finding and decision of the board were unwarranted in law, apparently as a matter of procedure, and that in any event the decision of the board was unreasonable and improper in failing to grant the prayer of the prosecutrix.

The present building is an automobile showroom and service station situated on the northwest corner of St. George's avenue and a street called Elm street. Elm street is open to the east of St. George's avenue, but apparently only mapped on the west side thereof; and the proposed new building, if permitted, would stand on land within the mapped lines of Elm street. St. George's avenue was formerly the main artery for traffic between Elizabeth and New Brunswick and is still an important thoroughfare, but the bulk of the through traffic has been diverted to the new highway known as Route No. 1 about a mile to the eastward. The district in question is zoned as residential on both sides of St. George's avenue as far north as Westfield avenue, a distance from Elm street of over half a mile. The residential zoning exists from Elm street south for about two hundred and fifty feet, after which there is a business district on both sides of St. George's avenue as far as a street called Race street, the distance scaling about one thousand feet on the zoning map. At the time the present building of prosecutrix was constructed, there was no residential zoning at that point. At that time also, the prosecutrix owned no land beyond the site of her present building, but after the district was zoned as residential, she acquired land adjoining her original building on the south and within the lines of Elm street as we have said; and on this property she desires to build her new building. A glance at the zoning map shows quite clearly the intent of the city authorities to retain the district in question as residential except so far as portions of it are, or may become, available for park purposes. A branch of the Raritan river runs to the westward from Elizabeth avenue right through the residential district and the map indicates by dotted lines a proposed parkway on both sides of it. One of the special maps submitted for our use indicates as park property on the west of St. George's avenue, all the land beginning at the present premises of the prosecutrix, running northwardly across Central avenue and to the Rahway river, a distance of about seven hundred and fifty feet. South of the present building of the prosecutrix, on the same side, are two residential prop-

erties and then begins the business district already spoken of. Opposite the building of the prosecutrix are three residential properties and apparently a tract of about one hundred and eighty-five feet on St. George's avenue devoted to school purposes. South of these residential properties on the east side, beginning one hundred and ninety-five feet south of Elm street, there is a large garage and other business properties further on.

It is evident, therefore, that the present building of the prosecutrix, used as an automobile showroom and service station, is isolated by a perceptible distance from the district zoned for business on the south with residential properties between, and that to the north there is nothing of a business character for a long distance. It is stated, and doubtless with truth, that the residential properties on both sides of St. George's avenue are old and perhaps out of date and undesirable for residential purposes. But we feel clear that this court is not in a position to hold that the general zoning scheme, which has obtained in this district for some years, is out of joint and should be disregarded. The question before us on the merits, and the only question, is whether the board of adjustment should have made an exception in the case of the prosecutrix. On this meritorious question we see no reason whatever to lead to the conclusion that the decision of the board was in any way unreasonable or improper. The application is not even for an addition to an existing building but, confessedly before the board and before this court for the erection of a new building. The fact that the prosecutrix acquired the additional lot of some fifty feet frontage after residential zoning went into effect shows, of course, that she bought this property with her eyes open as to the zoning situation and is not entitled to such consideration as she might have been entitled to, had the residential zoning taken effect after a previous purchase.

The second point made for prosecutrix is that the proceedings before the board of adjustment were "irregular and unlawful." The return shows a written "application for variation from the requirements of the building zone ordi-

nance." As required by the regulations, notice was sent to owners of neighboring property; a date of hearing was set; after adjournment the hearing was had; and at some time the board made a formal inspection of conditions on the ground. They heard what objectors and others had to say, but no witnesses were sworn. In the brief for prosecutrix it is stated that the board refused to allow any witnesses to be sworn, but the brief does not state where such refusal is to found, and we have been unable to find it in the printed book. The board took the practical and sensible method of examining the physical conditions on the ground. The statute does not require that the sworn testimony of witnesses be taken. Admittedly, the zoning ordinance stood in the way of the proposed building. The jurisdiction of the board, created and limited by the statute, is fourfold. *Pamph. L.* 1928, *ch.* 274.

1. To review legal error by an administrative official in enforcing an ordinance. No such claim is made.

2. To hear and decide special exceptions to the terms of the ordinance; but only in cases where the lands abut a more liberal zone and the exceptional use does not extend more than one hundred and fifty feet into the restricted zone. Here, the lands do not abut, and the proposed building is over one hundred and fifty feet in the restricted zone.

3. Much the same as No. 2: special conditions which would make literal enforcement an unnecessary hardship. This case is clearly not in that class, which contains the same abuttal and one hundred and fifty feet limitations.

4. To recommend to the governing body a relaxation of the ordinance as to lands outside the one hundred and fifty feet and abuttal limitations. This case is probably assignable to the fourth class in the matter of situation, but what is conferred on the board is a discretionary power, not a legal obligation. Quite plainly, the board saw no case calling for the exercise of their discretion favorably to the prosecutrix. That would seem to end the matter, as there is no suggestion of improper conduct or improper motive. The case was fully heard, and considered with care, as is indicated by a decision

taking up thirteen printed pages. Our examination of it satisfies us that there is no reasonable or legal ground for interfering with the finding of the board, and accordingly the writ will be dismissed, with costs.