37 N.J. Super. 461 (1955)
117 A.2d 650
WILLIAM HAY, PLAINTIFF-RESPONDENT,
v.
BOARD OF ADJUSTMENT OF THE BOROUGH OF FORT LEE, THE BUILDING INSPECTOR OF THE BOROUGH OF FORT LEE, AND THE BOROUGH OF FORT LEE, IN THE COUNTY OF BERGEN, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 1955.
Decided October 21, 1955.
*462 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Ralph W. Chandless argued the cause for the respondent (Messrs. Chandless, Weller & Kramer, attorneys).
Mr. William V. Breslin argued the cause for the appellants (Mr. Daniel Gilady, on the brief).
*463 The opinion of the court was delivered by FRANCIS, J.A.D.
This is an appeal from a judgment of the Law Division directing the Building Inspector of the Borough of Fort Lee to issue a building permit to the plaintiff.
Plaintiff is the owner of premises at 1217 Palisade Avenue in the borough. He has operated an automobile service station there continuously since 1930.
In August 1941 a zoning ordinance was adopted for the first time. Hay's property was included in the one-family residence zone. Operation of the station continued thereafter as a nonconforming use.
With the passage of years, the building and equipment deteriorated and modernization and repair were considered necessary. In May 1954 Hays applied for a building permit to accomplish this. It is conceded that the plans and specifications presented to the building inspector were in proper form. However, the application was rejected on the ground the planned construction constituted an unlawful enlargement and extension of a nonconforming use.
A variance was then sought from the board of adjustment which sustained the inspector, stating:
"* * *
(2) That the proposed `redevelopment' anticipates demolishing the existing structure and erection of a new building on a different part of the plot with various other installation changes.
(3) That the proposed structure is an increase in area over the existing building. * * *"
In this action in lieu of prerogative writ, plaintiff charged that his nonconforming use gave him a legal right to the permit and further that the board of adjustment acted arbitrarily and unreasonably in refusing to recommend a variance. After hearing testimony as to the character of the structural changes sought to be made, the trial court ordered the building inspector to issue the permit. The ruling resulted from a finding that the changes would not enlarge or extend the existing use. In our judgment, this was error.
*464 Reference to some fundamentals may be useful for orientation purposes. A prime purpose of zoning is to bring about the orderly physical development of the community by confining particular uses to defined areas. Nonconforming uses are inconsistent with that purpose. They are recognized and permitted to continue only because they are antecedent to the ordinance. However, the policy of the law is to restrict them closely; although they may be continued they may not be enlarged or extended. Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64 (1952); Rockleigh Borough, Bergen County v. Astral Industries, 29 N.J. Super. 154 (App. Div. 1953), certification granted 15 N.J. 591 (1954).
The Legislature has dealt with one phase of such uses. N.J.S.A. 40:55-48 provides:
"Any nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the building so occupied and any such structure may be restored or repaired in the event of partial destruction thereof." (Emphasis ours)
Thus it may be said that case law and legislative enactment point clearly to a policy that preexisting discordant uses should be reduced to conformity as speedily as is compatible with justice. Rockleigh Borough v. Astral Industries, supra. Aside from physical anomaly, another important reason for this intention may be noted. Such uses, particularly a business use in a residence zone, commonly give the property owner an economic advantage over his neighbors, amounting at times to a monopoly because the character of the zone prevents the establishment of competition. That is not a consequential factor here because of the presence of other similar nonconforming enterprises in the zone.
Do the plaintiff's plans contemplate an enlargement or extension of the existing use rather than just a change of or a modernization of facilities? Attention is drawn immediately to the fact that the existing frame and stucco building is to be torn down and the cellar thereof to be filled in. In this connection, it must be noted that N.J. *465 S.A. 40:55-48 permits restoration or repair only in the event of partial destruction. Obviously such legislation intends that total destruction by design, as here, or by accident, should terminate the use. D'Agostino v. Jaguar Realty Co., 22 N.J. Super. 74, 77 (Ch. Div. 1952); Sitgreaves v. Board of Adjustment of Nutley, 136 N.J.L. 21, 27 (Sup. Ct. 1947); De Vito v. Pearsall, 115 N.J.L. 323 (Sup. Ct. 1935); Rathkopf, Zoning and Planning (2d ed. 1949), 307.
But our decision need not be predicated on the statute. The existing building, according to the description attached to plaintiff's affidavit and application for variance, is 25 feet by 32 feet or an area of 800 square feet. It stands on one rear corner of the lot at an angle so that its rear wall forms the hypotenuse of a right angle triangle, the other two sides of the triangle being portions of the side and rear lot lines. This building and all evidence of its present locus are to disappear. The new building is to be constructed almost in the center of the lot, squarely facing Palisade Avenue and a short distance from and parallel to the rear lot line. It is to be 27 feet by 44 feet in size or 1,188 square feet in area. This is 388 square feet or 48 1/2% larger than the existing structure.
To offset the effect of this manifest enlargement, plaintiff explains that in the past minor repair work was done in the open about the premises and that there were two open-air greasing and lubrication pits. This repair work and the operations performed in the pits will be done in the new building.
At present there are four pumps for gasoline at the station; two of them had been inoperative for about three years prior to the hearing in the trial court. The plans call for removal of the pump islands and the building in a different location of two new and larger islands on which four new pumps will be placed. These islands will have mushroom flood lights. Apparently three 1,000-gallon gasoline tanks are to be removed and three new ones installed; two of them are of 3,000-gallon capacity and one of 2,000 *466 gallons. One of the 1,000-gallon tanks is to be reused as a depositary for waste oil. The entire lot is to be repaved.
Appellate argues that no enlargement or extension of his use will come about as the result of the new building and the other structural changes. He points out that the lot area was indiscriminately utilized for repair work and that a definite portion of it was used for the greasing pits and that the larger building will simply house these former outdoor activities along with the phases of the business which were conducted indoors.
The contention that construction of a building to house an outdoor nonconforming use is not an enlargement of the use has met adverse decision in the Supreme Court. Monmouth Lumber Co. v. Ocean Township, supra, 9 N.J., at page 77.
Moreover, in De Vito v. Pearsall, supra, a property owner wished to tear down a nonconforming greenhouse in which a business was being conducted in a residential zone, and replace it with a substantially larger one. The denial of a permit and a variance was sustained. The former Supreme Court declared that the proposal was not for restoration and repair but a "tearing down and building anew" on a much larger scale.
In connection with the suggestion that the entire lot had been used for the business, Justice Case wrote:
"Carried to its logical result, the argument made for the prosecutor is that if a nonconforming use is once established on a property, that use may be extended and enlarged to the length and breadth of the entire plot without restraint as to height and depth. We do not understand that to be the law." Id., 115 N.J.L., at page 325.
Frank v. Luther, 18 N.J. Super. 193 (App. Div. 1952), is a rather comparable case. The property owner operated a nonconforming service station in a residential district. The station consisted of a small building containing 192 square feet, an open grease pit of 264 square feet, an open kerosene area of 96 square feet and an open driving, tank, and pump area of 3,587 square feet. Permission was denied to construct a new building of 784 square foot area which would join and *467 extend the existing one and serve to house the grease pit. The Appellate Division considered it clear that even though the premises would still be used as a gasoline station, "the proposed alteration would substantially enlarge or extend the present nonconforming structure and use."
Other pertinent examples of enforcement of the policy against augmentation of nonconforming uses are: Rockleigh Borough v. Astral Industries, supra; Gerkin v. Village of Ridgewood, 17 N.J. Super. 472 (App. Div. 1952), certification denied 9 N.J. 404 (1952); Home Fuel Oil Co. v. Board of Adjustment of Glen Rock, 5 N.J. Super. 63 (App. Div. 1949); Pieretti v. Johnson, 132 N.J.L. 576 (Sup. Ct. 1945); Burmore Co. v. Smith, 124 N.J.L. 541 (E. & A. 1940).
There is no dispute of any legal consequence in the facts. In our judgment, they require the conclusion that plaintiff's proposed structural changes constitute an enlargement of his nonconforming use.
The further argument is made that denial of the permit is discriminatory because other variances of similar nature have been granted within the zone. The borough does not deny that some variances were awarded to other nonconforming users for repair or structural changes. However, this fact of itself creates no mandate in plaintiff's favor. Scaduto v. Bloomfield, 127 N.J.L. 1 (Sup. Ct. 1941); O'Connor v. North Arlington, 1 N.J. Super. 638 (Law Div. 1949). We do not know what the motivating factors were in those cases; nor do we know whether the relief was awarded for reasons of "undue hardship" or for "special reasons." R.S. 40:55-39(c) and (d). And no proof was adduced to show that because of these variances or other reasons the character of the neighborhood had so changed as to make zoning for residence purposes unreasonable.
One of the variances on which reliance is placed was ordered by this Division in 1948. Roberts v. Board of Adjustment, 1 N.J. Super. 29 (App. Div. 1948). The property involved is almost directly across the highway from the premises in question. Examination of the map furnished *468 to us reveals its most unusual character. It is a small triangular piece of land, an island surrounded on all sides by public streets, two of them being substantial and busy highways.
When the variance was sought, the island comprised only two lots. One contained a nonconforming gasoline station; the other was vacant land on which the owner desired to erect and operate a milk bar. In directing the variance, the court pointed to other nonconforming uses in the area, the absence of dwelling houses in the immediate vicinity and the physical location and characteristics of the property which made it undesirable and unfit for residential purposes.
The evidence in our case discloses that there has been considerable construction of sizeable one-family houses in the zone. One witness said that now "the full complete neighborhood * * * is residential area, all residential homes." Eighteen such home owners, all living within 200 feet of the Hay property, were said to oppose the planned construction.
This residential development gives force to Judge Eastwood's language in the Roberts case:
"We are of the opinion, however, that there is a distinction between appellant's land, surrounded by three highways and a gasoline station, and other land in this one-family zone having a frontage only on one highway." Id., at page 34.
We are unable to agree that the plaintiff's proof requires or justifies the conclusion that he was deprived of any vested rights or discriminated against in the legal sense by the refusal of permission for his building project.
Under the circumstances the judgment of the Law Division is reversed and the denial of the permit and the variance by the municipal authorities is affirmed.