262 A.2d 472 (1970)
Louise P. DeWITT, Martha Fenn, Roy D. Neumeister, Elmer W. Bemis, Mary Jane Morgan and Town of Brattleboro
v.
TOWN OF BRATTLEBORO ZONING BOARD OF ADJUSTMENT and Sun Oil Company.
No. 31-69.
Supreme Court of Vermont, Windham.
February 3, 1970.
*473 Timothy J. O'Connor, Jr., Brattleboro, for Louise P. Dewitt et al.
John S. Burgess, Brattleboro, for Town of Brattleboro.
Kristensen, Cummings & Price, Brattleboro, for Sun Oil Co.
Before HOLDEN, C. J., and SHANGRAW, BARNEY, SMITH and KEYSER, JJ.
SHANGRAW, Justice.
Under date of March 10, 1967, the Sun Oil Company appealed from a decision of the building inspector of the Town of Brattleboro to the zoning board of adjustment for an "exception" to the then existing ordinance. This was for the purpose of constructing a colonial style filling station building at 57 Western Avenue, Brattleboro, Vermont, on land owned by it.
A public hearing was held by the board of adjustment on November 27, 1967. The board later met on December 13, 1967. On December 14, 1967 the board issued its order granting Sun Oil Company permission to construct the new filling station as requested.
Appellants, Louise P. DeWitt, et al. filed their notice of appeal with the Windham County Court. A hearing was held by the court below, findings of fact were filed, and an order issued adjudging that the action of the Brattleboro Zoning Board, in granting the permit, was valid, reasonable and proper. The Town of Brattleboro filed its notice of appeal in this Court for review.
This case involves the enlargement, reconstruction and extension of the gasoline station located at 57 Western Avenue, Brattleboro, Vermont. In about 1940, and prior to the adoption of any zoning ordinance in the town, the gasoline station was constructed at its present location. The station, as constructed, and presently existing, is a one bay station with adjacent office and pumps.
On May, 1948, a general zoning ordinance was adopted by the Town of Brattleboro. The first general amendment thereto was adopted in 1952. Under the provisions of the ordinance, as amended and revised in 1952, the district in which the gasoline station is situated was classified and designated as residential. The permissible uses in this district did not include a gasoline station. A further general revision of the zoning ordinance was adopted in 1964.
On October 9, 1959, Sun Oil Company purchased this parcel of land located on the northerly side of Western Avenue upon which the one bay filling station, pumps and underground tanks were located. This lot was acquired from Christine B. Tyler and had a frontage of one *474 hundred feet and a depth of one hundred forty feet.
On the same date it purchased adjoining land from Ernest W. Gibson, Jr. This land had a frontage of forty feet on Western Avenue and a depth of eighty feet. This parcel had never before, or after its purchase, been used as part of the gasoline station in question or for any commercial purpose. The Gibson and Tyler parcels were, until recently, divided by a white wooden picket fence.
Under the general revision of the zoning ordinance in 1964, followed by a comprehensive zoning plan, the Gibson parcel and the Tyler property continued in a strictly residential zone.
The properties in question are in close proximity to Mark Hopkins College and located in an area predominately residential in character.
Sun Oil Company proposes to remove the old building and pumps on the Tyler property. It seeks to erect a new larger structure which would result in a three bay station, rather than a one bay station. By so doing, the Tyler lot, as well as a portion of the Gibson lot will be used for its facilities.
The decision of the Board of Adjustment to grant Sun Oil Company's request to permit installation of the three bay gasoline service station was arrived at after consideration of the provisions of Article XV, sections 1506-c and 1507-a, of the Zoning Ordinance as revised in 1964. After providing for certain restrictions concerning construction, development of the land, business thereon to be conducted, and manner of operation, the board made the following determination.
(a) There is presently located on this site an outdated facility in capable (sic) of meeting the demands of the motoring public in a volume sufficient to support a high-grade operation, and present indications are that this operation will continue on a sub-standard level unless expansion is allowed.
(b) It is the opinion of this Board that by permitting expansion of the facilities a substantially improved operation will result.
(c) It is the opinion of this Board that the proposed improvements specified in the petition of Sun Oil Company will improve the general appearance of the neighborhood, and will in a degree alleviate the nuisance conditions which now exist.
(d) It is the opinion of this Board that the relief requested by the Sun Oil Company may be granted subject to the stated conditions without detriment to the public welfare, and that this variance is the minimum necessary to relieve an unnecessary hardship, and the maximum permissible without impairment of the Comprehensive Plan expressed in the Zoning Regulations.
The appeal from the decision of the board of adjustment to the Windham County Court was taken under the provisions of 24 V.S.A. section 3022. By appellants' sworn petition they set forth that the decision of the board, in granting Sun Oil Company a variance under section 1507 of Article XV of the zoning ordinance, was illegal and unreasonable and specified grounds in support of such claims.
The purpose of section 3022, supra, is to inform the county court of the issues with which it is presented on appeal, as well as to give similar notice to opposing parties. The effect of this section limits the county court in proceeding on zoning matters only to grounds specifically predicated with the appeal, rather than to give the county court the overall de novo jurisdiction which it has over matters on appeal from the probate court. In re Crescent Beach Ass'n, 125 Vt. 321, 324, 215 A.2d 502.
*475 The procedure to be followed on such an appeal is governed by 24 V.S.A. section 3023 which provides in part as follows:
"The court shall hear the evidence and make such order approving, modifying or setting aside the decision appealed from as justice may require, and may make a new order in lieu of the order of the board. * * *"
The trial court, in its findings of fact, briefly referred to the meetings held and the action taken by the Board of Adjustment in favor of Sun Oil Company. It determined that the Board of Adjustment of Brattleboro had authority to grant the variance by virtue of Article XV, Sections 1506-c and 1507-a of the zoning ordinance.
The court further determined "That the Brattleboro Zoning Board of Adjustment by granting said variance did not exceed its authority as set forth in the Zoning Ordinance of the Town of Brattleboro in that it granted said variance without detriment to the public welfare, and found that the variance as granted was the minimum necessary to relieve an unnecessary hardship and the maximum permissible without impairment of the Comprehensive Plan expressed in the Zoning Regulations of the Town of Brattleboro, all in conformance with Article 15, Section 1507."
The lower court continued by adjudging that the action of the Brattleboro Zoning Board of adjustment to permit installation of a three-bay gasoline service station with office and sales area by Sun Oil Company at 57 Western Avenue, was valid, reasonable and proper.
In seeking a review in this Court from the determination made by the trial court, Louise P. DeWitt, et al. together with the Town of Brattleboro, have briefed the following assignments of error.
A. The court below erred in sustaining an enlargement and extension by the zoning board of adjustment of a preexisting nonconforming use.
B. The court below erred in affirming the apparent grant of "variance" by the zoning board of adjustment for what was in fact the extension of a nonconforming use.
1. The grant of a "variance" is not appropriate in cases of nonconforming uses.
2. The board of adjustment did not comply with ordinance requirements for variances.
3. No hardship in law was ever shown.
C. The zoning board of adjustment failed to comply with Vermont statutory requirements.
Article I, section 100, of the Brattleboro Zoning Ordinance defines nonconforming use as "Any lawful use of a building or land existing at the effective date of these Regulations, but not conforming to them." Thus, as to the use of the Tyler lot with present building and installations thereon, there is present a pre-existing nonconforming use thereof.
Appellants challenge the enlargement and extension of this nonconforming use. In so doing, attention is called to Article XIII, section 1301, of the zoning ordinance which provides, that any lawful use of a building or land existing at the effective date of these regulations may be continued subject to the following conditions:
(a) A non-conforming use shall not be enlarged or extended.
(b) A non-conforming use may be changed to another non-conforming use of the same or more restricted classification, but such use shall not then be permitted to change back to a less restricted classification.
(c) If any non-conforming building shall be destroyed by any means to an extent of more than 90 per cent of its value, repairs or reconstruction shall be made only in accordance with the *476 Regulations for the district in which it is located. Where the cost of such repairs or reconstruction is less than 90 per cent of the value of the building, it may be restored and the non-conforming use continued, and further provided that such restoration is started within a period of one year from the date of such destruction, and is diligently prosecuted.
Section 1301, subsection (a) prohibits the enlargement and extension of a nonconforming use of property. Subsections (b) and (c) permit restricted changes.
While nonconforming buildings and uses existing at the time the zoning restrictions become effective cannot be prohibited, they are subject to reasonable regulations under the police power to protect the public health, safety, welfare or morals. City of Rutland v. Keiffer, 124 Vt. 357, 366, 367, 205 A.2d 400.
Courts will not interfere with zoning or administrative action concerning special uses, variances, exceptions or nonconforming uses unless clearly unreasonable, irrational, arbitrary or discriminatory. Rutland v. Keiffer, supra, 367, 205 A.2d 400; 8 McQuillan, Municipal Corporations, section 25.279; 101 C.J.S. Zoning § 327.
As stated in Hay v. Board of Adjustment of the Borough of Fort Lee, 37 N.J. Super. 461, 117 A.2d 650, 651, "A prime purpose of zoning is to bring about the orderly physical development of the community by confining particular uses to defined areas. Nonconforming uses are inconsistent with that purpose. They are recognized and permitted to continue only because they are antecedent to the ordinance."
It is a fundamental theory of a zoning scheme that it shall be for the general good, to secure reasonable neighborhood uniformity, and to exclude structures and occupations which clash therewith. Guaranty Construction Co. et al. v. Town of Bloomfield, 11 N.J.Misc. 613, 615, 168 A. 34 (Sup.Ct.1933). The expansion of a nonconforming use offends the spirit of zoning regulation. Speakman v. Mayor and Council of Borough of North Plainfield, 8 N.J. 250, 84 A.2d 715.
In Ackley v. Nashua, 102 N.H. 551, 163 A.2d 6, 9, (1960) Chief Justice Kenison stated that "It is the general policy of zoning to carefully limit the extension and enlargement of nonconforming uses. * * * Since the extension or enlargement of a nonconforming use may be more detrimental to zoning than a variance, it has generally been held that a nonconforming use stands in no preferred position."
Construction of an addition to a building on land not previously used for the nonconforming purpose has been held to be a prohibited expansion. Amon v. City of Rahway, 117 N.J.L. 589, 190 A. 506. In the Amon case, supra, the Court commented on the fact that since the owner of the property purchased the property with her eyes open to the zoning situation, she was not entitled to the same consideration as she might have been entitled to had the residential zoning taken effect after a previous purchase.
Construction of a new building is usually regarded as a prohibited extension or enlargement of a nonconforming use. A nonconforming use has been held to be extended when an old building is torn down and replaced with a larger building, one that is more modern than the old, or one erected on a different portion of the lot. Thayer v. Board of Appeals, 114 Conn. 15, 157 A. 273; Hay v. Board of Adjustment of Borough of Fort Lee, 37 N.J.Super. 461, 117 A.2d 650.
In Midland Park Coal & Lumber Co. v. Terhune et al., 136 N.J.L. 442, 56 A.2d 717 it was held that the right to a nonconforming use of one lot does not automatically carry with it the right to the same use on an adjacent lot. It has been stated generally that the right to continue a nonconforming use is not ambulatory and that a nonconforming use of premises cannot be *477 transferred to another premises which were not previously subject thereto. Annotation, 87 A.L.R.2d, section 13, page 70.
The extension of a nonconforming use into or upon premises which were not subject thereto at the time of the enactment of the zoning ordinance has in most instances been held not permissible. It has been stated that in order to justify the granting of a permit for such extension, it must appear that there is an urgent necessity therefor. It is not sufficient that it would serve the convenience of the applicants. Cleland v. Mayor and City Council of Baltimore (1951) 198 Md. 440, 84 A.2d 49. See Annotation, and cases cited, 87 A.L.R.2d, page 31.
Under the provisions of section 1507 of Article XV of the Brattleboro Zoning Ordinance, before any variance is granted, the board of adjustment must make a written finding in its minutes as part of the record in each case stating specifically:
(a) The special circumstances, described in detail, that attach to the property in question, but do not generally apply to other property in the neighborhood, and have not resulted from any act of the applicant subsequent to the adoption of these Regulations.
(b) That relief can be granted without detriment to the public welfare or impairment of the comprehensive plan expressed in these Regulations, and that the variance is the minimum necessary to relieve an unnecessary hardship.
The record in the case reveals that the area in question is predominately and overwhelmingly residential. Sun Oil Company purchased the Tyler property and the Gibson lot subsequent to the adoption of the zoning regulations under which this area was zoned residential. The Gibson lot was never used for commercial purposes. When this lot was purchased Sun Oil Company voluntarily took a chance that it would be permitted to use it for a purpose not permitted by the zoning regulations.
A person who purchases land with knowledge, actual or constructive, of zoning ordinances which are in effect at the time of purchase is said to have created for himself whatever hardship such restrictions entail. Relief has been denied by variance to a purchaser who has created his own hardship. Slawson v. Zoning Bd. of Rev. of Town of Barrington, 102 R.I. 552, 232 A.2d 362.
The purpose of Sun Oil Company's application is to renew its building, improve and expand its business and better serve the public. The only hardship referred to is that of continuing the operation in an outdated facility. This is not sufficient to support its claim of unnecessary hardship. Award of a variance was never intended to afford relief from a mere personal inconvenience experienced by a property owner or as a guise to guarantee such an individual a more profitable use of the property. Gartsu v. Zoning Board of Review of the City of Woonsocket, R.I., 248 A.2d 597.
Appellants claim that the members of the board, as well as the public, were given no notice of the adjourned meeting of the board held on December 13, 1967. The record reveals that following the public meeting held on November 27, 1967, at which time considerable evidence was received by the board, the meeting "was adjourned with a deferred decision subject to legal counsel." It does not appear that further evidence was received by the board at the adjourned meeting. Apparently the adjourned meeting by the board of December 13, 1967 was merely held for the purpose of arriving at a decision on applicant's request which was handed down the following day. Appellants cannot prevail on this point.
Sun Oil Company, appellee, counters by calling attention to 24 V.S.A. section 3014 which in part provides that a board of adjustment "* * * may make special exceptions to the terms of the ordinance in harmony with its general purpose and intent *478 and in accordance with general or specific rules therein contained.
In this connection Article XV, section 1506 in part grants the board the power:
(c) To authorize, upon appeal in specific cases, such variance from the terms of these Regulations as will not be contrary to the public interest and to the comprehensive plan expressed in these Regulations where, owing to special conditions, a literal enforcement of the provisions of these Regulations will result in unnecessary hardship, and so that the spirit of these Regulations shall be observed and substantial justice done.
Applicant also calls attention to section 1507, subsection (a) heretofore quoted in this opinion.
It is the applicant's contention, as set forth in its brief, that sections 1506 and 1507 of the ordinance were intended to enable the zoning board of adjustment to have some flexibility in operating under the ordinance to meet unforeseen changes and needs.
Applicant also urges that the board considered the "hardship" requirements prior to allowing the "variance" and determined, in their best judgment, that the variance as granted was "* * * the minimum necessary to relieve an unnecessary hardship, and the maximum permissible without impairment of the Comprehensive Plan expressed in the Zoning Ordinance." In support of an affirmance on this issue, applicant calls attention to the case of Rutland v. Keiffer, supra, holding that courts will not interfere with zoning unless it clearly and beyond dispute is unreasonable, irrational, arbitrary or discriminatory, and that this rule is applicable to administrative grant or denial of special uses, variances, exceptions for nonconforming uses.
We call attention to the views expressed in the case of Beerwort v. Zoning Board of Appeals of the Town of Coventry, 144 Conn. 731, 137 A.2d 756 wherein it was stated:
"Viewed in terms of widest legislative intent, the purpose of zoning ordinances such as the one presently considered is to confine certain classes of buildings and uses to certain localities. So far as a nonconforming use is inconsistent with this objective, the nonconforming use should, consistently with the property rights of the individuals affected and substantial justice, be reduced to conformity as quickly as possible. The general method of accomplishing this end is to prevent any increase in the nonconformity and eventually to lessen and do away with the nonconforming use."
In effect, applicant's petition presents a request for an enlargement and extension of a nonconforming use of the Tyler property, and also an exception to the zoning ordinance by its request to utilize the Gibson lot for commercial purposes.
The extension of a nonconforming use involves the exercise of powers distinguishable from, and more limited than the exercise of the power to grant variances. 101 C.J.S. Zoning § 270. Colabufalo v. Board of Appeal of the City of Newton, 336 Mass. 213, 143 N.E.2d 536.
It is evident that the spirit of the zoning ordinance of the Town of Brattleboro is against the extension of nonconforming uses of property.
The decision to permit use of the Gibson property for commercial purposes amounted to an attempt to amend the zoning regulations and such action was clearly beyond the powers delegated to the board. It had no authority to amend the zoning ordinance established by the town under the guise of granting an exception or variance.
There is a shortage in the facts as found by the trial court, however this issue has not been raised by any of the parties to this litigation. Sufficient undisputed facts are contained in their briefs and record to permit a resolution of the issues presented to this Court for review. We are called upon to apply the applicable law to these undisputed facts.
The record before us reveals that the trial court actually based its judgment upon a finding that the granting of the variance, extension or exception was the result of powers vested in the board of adjustment. With the facts before us, we disagree with this conclusion.
Other points have been presented in the briefs of the parties. These need not be considered in view of our result in this case.
The judgment of the Windham County Court is reversed. The order of the Board of Adjustment of the Town of Brattleboro is vacated. Appellants to recover their costs. Let the result be certified.