289 A.2d 673 (1972)
Joseph R. A. CLOUATRE
v.
TOWN OF ST. JOHNSBURY BOARD OF ZONING ADJUSTMENT.
No. 101-71.
Supreme Court of Vermont.
February 1, 1972.
Motion for Reargument Denied April 5, 1972.
*674 Paterson, Gibson, Noble & Brownell, Montpelier, for plaintiff.
Swainbank, Gensburg & Morrissette, St. Johnsbury, for defendant.
Before SHANGRAW, BARNEY, SMITH and KEYSER, JJ., and DALEY, Superior Judge.
SMITH, Justice.
This is an appeal from the Caledonia County Court, the judgment order of which reversed the decision of the St. Johnsbury Board of Zoning Adjustment, in refusing to grant a variance requested by the plaintiff to locate a dwelling on a lot owned by him at the corner of Mt. Pleasant Street and Boynton Street. The judgment order of the lower court adjudged that the decision of the St. Johnsbury Board of Zoning Adjustment was illegal, unreasonable and arbitrary and ordered the said Board to grant the application of the plaintiff.
There is no dispute as to the factual situation in the case and such facts were presented to the lower court by a stipulation of the parties.
The plaintiff owns certain lands and buildings located at 7 Mt. Pleasant Street in St. Johnsbury, with one side of his lot of land bordering Mt. Pleasant Street and another side of said lot bordering Boynton Avenue.
The premises of the plaintiff contain approximately 22,000 square feet, with a frontage of 98.98 ft. along Mt. Pleasant St., and with a frontage of 215.39 ft. on Boynton Avenue, all of which was shown on a map filed with the lower court and a part of the record. A six-apartment dwelling house occupies the plaintiff's premises.
*675 The apartment house and its premises existed before the enactment of a zoning ordinance by the Town of St. Johnsbury, in accordance with 24 V.S.A. Chapter 67, in April, 1969. The occupancy of the plaintiff's premises by a six-apartment dwelling house, erected before the adoption of the ordinance, constituted a nonconforming prior use under the ordinance. The Clouatre premises are located in a zone designated as a Residence "B" zone under the ordinances, said zone being designated for single and two-family residences and professional offices under Section 1302 of the zoning ordinance.
In his application to the Building Inspector, the plaintiff requested permission to erect a single family dwelling house on the northeast end of his premises, with a frontage of 100 ft. along Boynton Avenue and on a lot 10,000 sq. ft. in size. If such application had been granted it would have resulted in the present apartment building on the premises occupying a lot no more than 12,000 sq. ft.
Reduced to its simplest terms, the application to the Building Inspector of St. Johnsbury was to erect a house upon one portion of the premises owned by the plaintiff in a location where such building would be permissible under the provisions of Residence "B" zone, single family residences, of St. Johnsbury Zoning Ordinances § 401.
There seems to be no dispute that the multi-family house owned by the plaintiff, if erected after the passage of the zoning ordinance, would have had to have been located in a Residence "C" zone, under the provisions of the ordinance. Under Section 2005 of the ordinances, if such multi-family dwelling had been erected in the Class "C" zone, it would have had to have been located on a lot measuring 8,000 sq. ft. for the first family and an additional 1,500 sq. ft. for each additional family. In the case of the six-family dwelling, such lot would require an area of 15,500 sq. ft. If the variance requested by the plaintiff to erect a one-family house in that part of the lot owned by him in the Class "B" section is granted, it will require such one-family dwelling to be build on an area of 10,000 sq. ft. Such construction would result in the multi-family dwelling occupying a lot of no more than 12,000 sq. ft. in size.
The records before us show that Mr. Clouatre applied for a permit to move a single family dwelling from another location in St. Johnsbury to the lot here in question, upon which there was a nonconforming use. According to the records of the St. Johnsbury Board of Zoning Adjustment, upon the refusal of the building inspector to grant such permit, the plaintiff, Clouatre, appealed for a variance to the Board. Following a hearing on the proposed variance, the Board sought legal advice. The record shows that the variance was later refused by the Board, based upon the legal advice received by it. It was from this decision of the Board that the plaintiff took his appeal to the County Court.
The County Court based its decision and judgment order upon a matter of law. It was the judgment of the county court that the Board misinterpreted the zoning ordinance in denying the application of the plaintiff on the ground that the multi-apartment house of the plaintiff, which constituted a nonconforming use in Zone "B", was subject to the lot requirements for Zone "C". The lower court went on to say that such decision on the part of the Board was "illegal, unreasonable and arbitrary", and ordered the Board to grant the plaintiff's application. The briefs of the parties before us are primarily directed to argument on the ground just stated.
However, the record before us does not disclose that the action of the Board of Zoning Adjustment was based solely upon the legal ground upon which the lower court made its decision and judgment. It was also based upon the statement of the Board that "It is not within the power of the Board of Adjustment to grant such a deviation from the intent of the Ordinance."
*676 Article 1, "Purpose of the Zoning Ordinances of the Town of St. Johnsbury", sets forth, among others, the following purposes: "to prevent overcrowding of real estate."
Article VII of the ordinances "Nonconforming (sic) Uses", reads in part as follows:
The use of any building, structure, or land, which is made non-conforming (sic) by reason of the adoption of this Ordinance, or which shall be made non-conforming (sic) by reason of a subsequent amendment, may be continued, subject to the following provisions: . . .
Section 703. Extension of Use
. . . A non-conforming (sic) use of land may not be extended to any part of the remainder of the lot.
Under Article VI of the ordinances, "Applications of Zone Regulations", we quote the following section:
Section 604.
No yard or lot existing at the time of passage of this Ordinance shall be reduced in dimension or area below the minimum requirements set forth herein. Yards or lots created after the effective date of this Ordinance shall meet at least the minimum requirements established by this Ordinance.
Under Article III of the ordinances, entitled "Definitions", Section 301, sub-section (t), variance is defined as:
A variance is a relaxation of the terms of the Zoning Ordinance where such variance will not be contrary to the public interest and where, owing to conditions peculiar to the property and not the result of the actions of the applicant, a literal enforcement of the Ordinance will result in unnecessary or undue hardship."
It is apparent that the Board of Zoning Adjustment, as well as the plaintiff, treated the plaintiff's request to move a house onto his property held under a non-conforming use as a variance. It was also so treated by the county court.
It is the general policy of zoning to carefully limit the extension of a non-conforming (sic) use. Accordingly, the enlargement of a non-conforming (sic) use by new construction is treated as a variance, rather than an exception to the regulations. Brassard Bros. Inc. v. Barre Town Zoning Board of Adj., Vt., 264 A.2d 814, 815-16 (1970).
While nonconforming buildings and uses existing at the time that the zoning restrictions became effective cannot be prohibited, they are subject to reasonable regulation under the zoning power to protect the public health, safety, welfare or morals. City of Rutland v. Keiffer, 124 Vt. 357, 366, 367, 205 A.2d 400, 407 (1964).
Courts will not interfere with zoning or administrative action concerning special uses, variances, exceptions or non-conforming uses unless clearly unreasonable, irrational, arbitrary or discriminatory. DeWitt v. Town of Brattleboro Zoning Board of Adjustment, Vt., 262 A.2d 472, 476 (1970).
The Board of Zoning Adjustment, when confronted with the application for a variance submitted by the plaintiff in respect to the erecting of a dwelling house on property already owned by him under a nonconforming use was presented with several questions under the ordinance. Perhaps the most important question was the one presented under Article VI of the Ordinances § 604, which provides, as seen above, that no lot existing at the time of passage of the ordinance could be reduced in dimension or area below the minimum requirements "set forth herein", as it might be applicable to the request of the plaintiff. It was also the duty of the Board, under the general purposes of the zoning ordinance "to prevent overcrowding of real estate." There is no doubt that if the variance sought by the plaintiff is granted that the *677 lot upon which the nonconforming use had been established before the passage of the ordinances, would be reduced in size. We are confronted as to the interpretation of the meaning of "below the minimum requirements set forth herein", as applied to the lot existing at the time of passage of the ordinance.
Had the six-apartment house, owned by the plaintiff, been constructed after the passage of the ordinance, in a Zone "C" area, the lot requirement would have been 15,500 sq. ft. Although the six-family dwelling of the plaintiff, while in Class "B" zone and so allowed to continue as a nonconforming use, the factual situation was that such nonconforming use did comply with the lot size requirements of a Class "C" use. Stating the situation in another way, it could be said that the nonconforming use of the property by the plaintiff was in the existence of the six-family apartment house structure on the lot upon which it was built, but not in the size of the lot upon which such structure stood.
It is our view that the Board of Zoning Adjustment, in order to carry out the general purpose of the ordinance to prevent overcrowding of real estate had the right, and the duty, to take into consideration the lot size restrictions set forth in the ordinance for the various zones as classified and described in the ordinance, in reviewing the plaintiff's request for a variance. It can hardly be doubted that these lot size restrictions were placed in the ordinance for the very purpose of preventing overcrowding of real estate, as well as to provide a wholesome and protected home environment, also, one of the purposes for which the ordinance was enacted. While the apartment building, and the lot which plaintiff possesses, was not subject to the ordinances at the time of their adoption because of the previous non-conforming use, they were, after the ordinances were enacted, subject to reasonable regulation to protect the public welfare. Rutland v. Keiffer, supra.
The plaintiff, by his request for a variance, was actually seeking an extension of his nonconforming use by seeking to limit the size of the lot upon which use had been allowed. It is, of course, true that the plaintiff was not seeking to enlarge the nonconforming use of his property, but he was seeking to alter the nonconforming use to make the land more nonconforming than it had been at the time that the ordinance was enacted. As we before noted, the lot of land upon which the apartment building of the plaintiff was located, would come within the legal limits of lot size set forth in the ordinance for either Class "B" or Class "C" purposes at the time of the enactment of the ordinance. It was the building that stood thereon that was nonconforming at the time the ordinance was enacted, because of its location in a then Class "B" zone, rather than in a Class "C" zone. In effect, what the plaintiff is asking is to extend the nonconforming use by a limiting of the lot size upon which the nonconforming exception from the ordinance existed. We find no error in the Zoning Board of Adjustment taking into consideration the lot size restrictions of the ordinance in coming to its determination, in view of its duties to prevent overcrowding of real estate and to provide a protected home environment. We do not find, as did the lower court, that such action was clearly irrational, arbitrary or unreasonable.
But of more importance in our determination of the case before us, the record does not disclose that the plaintiff, in his request for a variance, set forth any practical difficulty or undue hardship which he would suffer in the event that the variance was not granted. In his appeal to the county court, the plaintiff did not inform the court of this issue in his appeal, which he should have done (see In re Crescent Beach Assoc., 125 Vt. 321, 324, 215 A.2d 502), nor did he brief such point before the county court. However, the defendant town, in its brief submitted to the county court, did raise and argue this very issue, *678 in its claim that the Board of Zoning Adjustment did not have the power to grant the variance requested.
When the trial takes such a course, an issue may be introduced in the case which was not properly pleaded. Brassard Bros. Inc. v. Barre Town Zoning Board of Adj., supra.
The powers of the Zoning Board of Adjustment in the matter of variances are set forth in sub-section a(2) of Section 902 of the Zoning Ordinances of the Town of St. Johnsbury as follows:
To grant variances from the strict letter of the Ordinance in cases of practical difficulty or undue hardship, provided there is no substantial departure from the intent of the Ordinance.
As a result of the failure of the plaintiff to allege or prove any practical difficulty or undue hardship in his request for a variance the Zoning Board of Adjustment lacked authority under Section 902 of the Zoning Ordinances of the Town of St. Johnsbury to grant his request. The Zoning Board of Adjustment properly denied the application of the plaintiff. It follows that the judgment order of the county court, reversing the decision of the Board of Zoning Adjustment and granting the variance to the plaintiff, was in error.
As was said in Brassard Bros. Inc. v. Barre Town Zoning Board of Adj., supra, 264 A.2d p. 817:
The judgment must be reversed. And we are not persuaded that a remand for further proceedings and additional findings would serve or supply the deficiency which produced the reversal.
There being no need for us to consider the other assignments of error claimed by the defendant, we will enter final judgment here.
Order of the Caledonia County Court is reversed and the denial of the plaintiff's application by the Board of Zoning Adjustment of the Town of St. Johnsbury is reinstated.
NOTE: The defendant filed a motion to reargue. The opinion was recalled and amended but there is no change in the result.