## STATE OF VERMONT
## ENVIRONMENTAL COURT

|                           |   |                              |
|---------------------------|---|------------------------------|
|                           | } |                              |
| **In re LaBounty Enterprises** | } | Docket No. 18-2-06 Vtec |
| **Variance Application**  | } |                              |
|                           | } |                              |

## Decision

This matter concerns the proposed development of a pre-existing undersized lot on Keel Road in the Town of Grand Isle (Town). It was heard on the merits before Environmental Judge Thomas S. Durkin on April 10, 2006. This appeal was filed on behalf of the Applicant, LaBounty Enterprises, Inc., which is represented by John W. O'Donnell, Esq. The Town appeared in this proceeding and presented evidence and legal arguments through its attorney, Will S. Baker, Esq. No other party participated or appeared in this proceeding.

The subject application seeks approval for several variance requests as to setbacks, so that a proposed single-family dwelling may be constructed as proposed on the subject parcel. Based upon the evidence submitted at trial, the Court makes the following factual findings:

## Factual Background

1. The subject property is an undeveloped parcel of land containing about 6,000 square feet, or about 0.14 acre. It is located on the south side of Keel Road, has 60 feet of road frontage and is 100 feet deep.

2. Appellant is a Vermont corporation owned by Mr. and Mrs. LaBounty. Mrs. LaBounty testified at trial.

3. The subject parcel was purchased in 1995 from Mrs. LaBounty's father as part of a purchase of numerous parcels of land in Grand Isle and elsewhere that totaled between 30 and 50 acres, in the aggregate.

4. The subject parcel is located in the Rural Residential and Agricultural Zoning District (RR & Ag. District).

5. By its application, Appellant first proposed to install a manufactured home on the subject property that measured 14 feet in width by 60 feet in length. At trial, Mrs. LaBounty offered to reduce the proposed structure to 44 feet in length. Appellant's expert witness offered testimony

that the minimum size of a newly manufactured home (not including campers or trailers) is 44 feet in length. No evidence was offered to dispute this representation.

6. The neighborhood surrounding the subject property is made up of a mix of seasonal and year-round residences. Some of the surrounding homes are campers or trailers, some are manufactured homes (including those installed on lots owned and developed by Appellant) and some homes are stick-built structures.

7. The neighborhood was laid out and subdivided many years ago, prior to the enactment of the Grand Isle Zoning Bylaws (Bylaws) and Subdivision Regulations (Regulations). It appears that the neighborhood streets were established to accommodate two rows of lots, all measuring 60 feet wide for road frontage and 100 feet in depth. Some of these individual lots have been developed with some type of residence, although the evidence at trial showed that such single lots only had campers or small structures on them that were used as seasonal residences.

8. Many of the developed lots in the surrounding neighborhood consist of the combination of at least 3 and as many as 17 of the original, 60′ by 100′ lots.

9. There was no evidence presented at trial that any other lot, similarly sized to the subject lot, has been granted a variance.

10. The Bylaws require the following setbacks for the RR & Ag. District: front setback of 40 feet; side setbacks of 25 feet; rear setback of 25 feet; and driveway setback of 15 feet from side boundaries.

11. These Bylaw provisions also require a minimum lot size of one acre and minimum road frontage of 150 feet. The subject lot does not conform to these requirements, but was created prior to the enactment of zoning.

12. To accommodate the minimally sized structure Appellant represented at trial (i.e.: 14 feet by 44 feet), Appellant's proposed development would require the following variances: a nine-foot reduction in either the front or rear setback (or combination thereof) and a four-foot total reduction in either (or both) of the side setbacks, not including overhangs, steps or decks. Based upon Mrs. LaBounty's testimony at trial, the proposed steps or decks would be between three and four feet wide. No specific design was offered at trial.

13. Steps and decks, less than two feet off the ground, are exempt from the zoning setback regulations, per the testimony offered at trial by the Grand Isle Zoning Administrator.

14. When the LaBountys purchased the subject lot in 1995, the zoning regulations then in effect pertaining to lot size, frontage and setbacks for the RR & Ag. District were the same as the

applicable provisions when Appellant submitted its current application.

## Discussion

This case involves the proper interpretation of Bylaws § 2.12.5 and 24 V.S.A. § 4469(a). The statutory provision is essentially mirrored by the Bylaws provision.[1] Relevant portions of the Bylaws include the following language from the statute:

(1) There are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that unnecessary hardship is due to these conditions, and not the circumstances or conditions generally created by the provisions of the bylaw in the neighborhood or district in which the property is located.

(2) Because of these physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the bylaw, and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) Unnecessary hardship has not been created by the appellant.

(4) The variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, substantially or permanently impair the appropriate use or development of adjacent property, reduce access to renewable energy resources, or be detrimental to the public welfare.

(5) The variance, if authorized, will represent the minimum variance that will afford relief and will represent the least deviation possible from the bylaw and from the plan.

24 V.S.A. § 4469(a).

When applying for a variance, an applicant accepts several difficult burdens, all established by the regulatory language cited above. We have been cautioned that for a zoning variance to be granted, it "must be based upon a showing of conformance with each of the five statutory criteria . . . ." In re Dunnett, 172 Vt. 196, 199 (2001), citing Blow v. Town of Berlin Zoning Adm'r, 151 Vt. 333, 335 (1989)(emphasis in the original). Thus, we must review the application here in the context of each of the five statutory standards. If we cannot make a positive finding as to the proposed development on any one of these statutory standards, we must deny Appellant's application.

---

[1] The only apparent difference appears to be that the Bylaws have no subsection (5). That section of the statute appears as the last sentence in subsection (4) of the Bylaws.

The subject lot is a pre-existing lot which does not conform to the applicable size and frontage dimensions. However, the parcel may be developed because it qualifies as an "existing small lot," a legal conclusion that the Town does not contest. See Bylaws § 4.6 and 24 V.S.A. § 4412(2). Status as an existing small lot does not exempt a parcel from the requirement that the proposed development either comply with setback requirements or obtain the necessary variances. Appellant here does not dispute that its development must obtain variances from the setback requirements and has sought such variances with its pending application.

The subject lot is similar, and in fact identical in size to several of the lots in the surrounding neighborhood. The evidence at trial showed that most, if not all, of the nearby developed lots that have remained 60′ by 100′ in size are occupied by small homes or campers that are used as seasonal residences. Nonetheless, it is the "narrowness [and] shallowness of lot size," not created by the applicant here, that gives rise to the need for Appellant's variance request. The Court therefore concludes that subsections (1) and (3) have been met.[2]

The manufactured home Appellant suggested at trial is similar to several homes Appellant has installed on other lots in the surrounding neighborhood. The proposed home would also be similar to several of the other year-round residences in the area. These year-round residences appear larger than the nearby seasonal residences, but do not "alter the essential character of the neighborhood." Even though these residences are on larger lots, we conclude that the proposed home will not substantially or permanently impair the appropriate use or development of adjacent property . . . ."[3] Thus, we find that the proposed development satisfies subsection (4) of the Bylaw and § 4469(a).

However, the proposed development cannot satisfy the requirements of subsections (2). Both Appellant and the Town offered evidence at trial of several nearby campers and stick-built structures that could fit within the 10′ by 35′ building envelope of the subject lot. Such a structure would be more modest than Appellant proposes and may not bring about the improvements to the neighborhood that Appellant suggests its proposed development would bring. But subsection (2) does not speak to such considerations; it requires us to find that "there

---

[2] This conclusion is a close call. The facts presented could lead us to conclude that the subject lot is not unique and the need for a variance is not caused by unique circumstances, but rather by the proposed development's nonconformity with the setback regulations. However, even if we were to find that Appellant has not met the requirements of subsection (1), the outcome of this appeal would not change.

[3] The waste disposal system that would serve the proposed home would essentially consume the developable area of a similarly sized lot Appellant owns across Keel Road. However, since the neighborhood consists of many lots created by the merger of several adjoining lots, we do not find the proposed development and its waste disposal system to be in conflict with these specific statutory provisions.

is no possibility that the property can be developed in strict conformity with the provisions of the [RR & Ag. District]." The other neighborhood structures, many of them modest and for seasonal use only, evidence that the subject lot can be developed in strict conformity with the applicable Bylaws provisions.

For these same reasons, we conclude that the proposed development cannot satisfy subsection (5), in that the variance requested for the proposed development will not "represent the minimum variance that will afford relief and will represent the least deviation possible from the bylaw . . . ." The nearby seasonal residences evidence that the subject lot can be developed without any variance, thus compelling us to reach our conclusion as to subsection (5).

We are mindful that zoning regulations are a community's way of establishing how development should occur in its different neighborhoods and that the municipality is the first arbiter of what uses should be eliminated from certain zoning districts. See 24 V.S.A. § 4302(a) ("It is the intent and purpose of this chapter to . . . provide means and methods for the municipalities and regions of this state to plan for the prevention, minimization and future elimination of such land development problems as may presently exist or which may be foreseen"). See also DeWitt v. Town of Brattleboro, 128 Vt. 313, 319 (1970) ("a fundamental theory of . . . zoning [is] that it shall be for the general good, to secure reasonable neighborhood uniformity, and to exclude structures and occupations which clash therewith. The expansion of a nonconforming use offends the spirit of zoning regulation.")(internal citation omitted).

While we also wish to show respect to the rights of property owners to determine how they can develop their property, including property that predates and may now be in conflict with zoning regulations—see, for example, 24 V.S.A. § 4412(2) regarding existing small lots—we must follow the directives of the Dunnett and Blow Decisions. Section 4469 provides a mechanism by which variances may be granted, but the rigidity of its provisions reinforces the Legislature's intent to provide communities with the means to prevent, minimize, and eventually eliminate land development that is in conflict with lawfully enacted zoning regulations.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant's request for a variance is **DENIED**. A Judgment Order accompanies this Decision.

Done at Berlin, Vermont, this 14th day of July, 2006.

_____
Thomas S. Durkin, Environmental Judge