<div style="border:1px solid black; padding:10px;">

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

</div>

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4543-16T1

MARC E. GODLEWSKI, and
THERESA GODLEWSKI,

      Plaintiffs-Appellants,

v.

BOROUGH OF STONE HARBOR,
ZONING BOARD OF STONE HARBOR,
JOANNE MASCIA, and MICHAEL
KOOCHEMBERE,

      Defendants-Respondents.

_____

> Argued June 26, 2018 – Decided October 29, 2018
>
> Before Judges Nugent and Accurso.
>
> On appeal from Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0351-16.
>
> Fred S. Dubowsky argued the cause for appellants.
>
> Frank Guaracini, III, argued the cause for respondents Borough of Stone Harbor, Joanne Mascia and Michael Koochembere (Blaney & Karavan, PC, attorneys; Frank Guaracini, III, on the brief).
>
> Andrew D. Catanese argued the cause for respondent Stone Harbor Zoning Board of Adjustment (Monzo

Catanese Hillegas, PC, attorneys; Daniel S. Reeves, on the brief).

PER CURIAM

This is an action in lieu of prerogative writs. Plaintiffs, Marc E. Godlewski and Theresa Godlewski, owned what was once a nonconforming duplex located on three lots in the Borough of Stone Harbor. After obtaining approval of their application and proposal "to expand a nonconforming structure" to convert it to a single-family residence, they demolished it, leaving in place only the foundation and a wall. They now appeal a Law Division order that upheld the action of Borough officials who revoked their zoning permit and issued a stop work order. Because the Borough's Zoning Board of Adjustment (the "Board" or the "Zoning Board") granted the variances for the renovation and expansion of a nonconforming structure, and because the structure for which the Board granted the variances did not exist after plaintiffs demolished it, we affirm the Law Division order.

The structure plaintiffs owned was located on Eighty-eighth Street on three lots designated as Lots 84, 86.02, and 88.03 in Block 88.03 on the Borough tax map (collectively, "the Property"). From a bird's-eye view, the Property's shape resembles a flag atop a flagpole. The "pole" section, lot 84, is twenty-five feet wide, 110 feet deep, and fronts at the bottom on Eighty-Eighth Street.

2

The rear or flag portion of the property, according to the Board's Resolution, "measures only 34 feet by 70 feet, making any reasonable use of the lot impossible absent relief from the 25' rear yard setback requirement."

In September 2010, the Board granted plaintiffs' application for the variances needed to convert the duplex to a single-family residence. Three months later, in January 2011, the Board granted plaintiffs' second application "to expand a nonconforming structure." In their second application, plaintiffs' described the proposed expansion:

> The Applicant proposes the following: construct an entry platform and stairs on the north side of the dwelling; construct an addition the width of the structure on the east side and the west side; construct a second story deck on the east side; and alter the existing nonconforming shed so that the setbacks and distance to the dwelling are maintained.

Plaintiffs' application included a plot plan, proposed first and second floor plans, and elevations of the front, rear, and sides of the proposed renovations.

Following an objector's appeal, Buckley v. Godlewski, No. A-0634-11 (App. Div. Mar. 26, 2013), and a remand hearing before the Board, the Board determined plaintiff's second application was sufficiently different from the first so as not to be precluded by the doctrine of res judicata. The Board adopted Resolution No. 789-2010-Supp "that the Second Approvals granted pursuant to

3

Resolution No. 789-2010 remain in full force and effect." Although the same objector appealed the Board's decision to the Law Division and then to the Appellate Division, this court dismissed the appeal on March 17, 2015.

The Board's resolution, No. 789-2010, granted plaintiffs' application for a "hardship variance . . . pursuant to N.J.S.A. 40:55D-70(c)(1)." According to the resolution, the Board determined the variance was appropriate due to, among other things, "the unusual shape and size of the property" and "the location of the existing home on the lot." Specifically, the Board determined:

> failure to grant the requested relief would result in exceptional and undue hardship upon [a]pplicant because of the small size and unique shape of the subject lot and due to the location of the existing structure proposed for expansion, which will not permit an addition to reasonably be located in conformance with the zoning ordinance.

The resolution referenced plaintiffs' plot plan, which "depict[ed] the improvements as proposed," and the architectural plans, which depicted the proposed improvements.

Meanwhile, plaintiffs had obtained construction and zoning permits.[1] Sometime in December 2014, plaintiffs delivered a set of plans for a change to

---

[1] The construction and zoning permits reference the Board's approval of plaintiffs' original application in Resolution No. 783-2010.

the permits. Upon review of the plans, the Borough's zoning official, Joanne Mascia, learned plaintiffs intended to tear down the walls of the existing structure. She e-mailed plaintiffs on December 12, 2014, stating that if their intention was "to demolish the walls or structure be advised you lose your protected status and you will need to appear before the Zoning [B]oard of Adjustment for their approval to rebuild a new home in that footprint which is nonconforming."

Four days later, on December 16, 2014, following a site inspection in which she saw that plaintiffs had demolished all but one wall of the structure, Mascia wrote plaintiffs a letter. In the letter, she notified them she had revoked their zoning permit, enclosed a stop work order from the Construction Official, and informed them they had to return to the Board for "relief and approvals."

Several weeks later, in January 2015, plaintiff, Marc Godlewski, e-mailed Mascia and said he was "withdrawing my 'proposal' to construct Superior Walls, since you have interpreted that my intent is to build differently than the approvals granted by the Zoning Board. I plan on building the residence as approved by the Zoning Board . . . ." Mascia promptly replied, informing plaintiffs their approvals were for a renovation and addition, not a demolition and new construction. Stating she was "standing firm," she informed plaintiffs

they must return to the Board for either approvals or an interpretation of her decision.

Following plaintiffs' unsuccessful attempts to appeal to the Cape May County Construction Board of Appeals, which declined jurisdiction because the disputed issue involved zoning, and to the Law Division, which remanded the matter to the Zoning Board because plaintiffs had not exhausted their administrative remedies, the Zoning Board conducted a hearing on August 1, 2016, on plaintiffs' request for an interpretation. The Borough's Zoning Official and Construction Official testified. Robert Perotti, a self-employed builder, testified for plaintiffs.

Mascia testified plaintiffs submitted plans to construct the additions and renovations after the Board adopted Resolution No. 789-2010-Supp. The plans showed the existing walls and the "existing things that were to remain in the nonconforming structure." Based on those plans, she issued the zoning permit.

In December 2014, "Mr. Godlewski dropped off a set of plans for some type of a change to the permits that were issued." The plans were for a demolition and reconstruction. Mascia inspected the Property and saw that with the exception of "one little piece" of a wall, the structure was "down." Because plaintiffs had deviated from the Board approvals and demolished the existing

6

structure rather than renovate it, Mascia revoked their zoning permit. She testified she acted in accordance with the municipal code, which provided:

> 67-24. Duties. A zoning officer shall administer and enforce Chapter 560, Zoning, of the code of the Borough of Stone Harbor. He shall review applications for zoning permits and issue and revoke same as the circumstances warrant.

Mascia asked the Construction Official, Michael Koochembere, to photograph the property and the demolished structure. He did. He also determined "that it was no longer a renovation and it was a demolition." He revoked the building permit. Koochembere also testified Mr. Godlewski asked if he could use "'Superior Walls' to construct the housework." In Koochembere's opinion, that would mean Godlewski "was going to demolish what he had and construct it with Superior Walls," so he told Godlewski that because his permit was approved for a renovation only, he would have to resubmit plans and resubmit a permit update.

Plaintiffs' witness, Robert Perotti, a self-employed builder for nearly thirty years, had observed the structure on the Property before and after the demolition. He testified that though he knew the point could be argued, "there's no way for those east and west walls to remain in spite of what everyone may be looking at on the plans." He also testified the plans were "probably some of

7

the most ambiguous architectural drawings that I've ever seen." According to Perotti, in order to leave the walls intact, "one wall would actually sit in bedroom one and two a little more than three feet off of the exterior wall that was proposed as a new one." He said "[t]he easterly wall would have run through the master bedroom and through the master bath, too."

The Board upheld the actions of the Zoning Officer and Construction Code official. In its memorializing resolution, No. 844-2016, the Board determined the resolution granting the variance, No. 789-2010, was for a renovation and expansion, not demolition and reconstruction. The Board further determined "the fact that the existing home was being renovated in its existing location was a critical fact that went directly to the core of the Board's finding that the Applicant satisfied the hardship criteria pursuant to N.J.S.A. 40:55D-70(c)(1)."

Based on the photographic evidence, the Board concluded the Godlewskis' actions "have . . . resulted in a quantity of destruction that goes well beyond partial demolition of the Structure and has resulted in total destruction of the Structure." The Board further concluded that though the approval granted in Resolution No. 789-2010 "has never been rescinded or otherwise invalidated,

A-4543-16T1

the demolition of the Structure which previously existed on the Property renders that approval moot."

Plaintiffs filed an action in lieu of prerogative writs, challenging the Board's decision. In a comprehensive written decision, Judge Julio L. Mendez upheld the Board's, the Zoning Officer's, and the Construction Official's decisions. Judge Mendez agreed with the "Zoning Board's position that because demolition was unanticipated when the Zoning Board approved plaintiffs' application for renovation and expansion, and because there currently exists no property to renovate, plaintiffs' actions rendered those approvals moot."

Judge Mendez recounted the evidence that demonstrated plaintiffs sought variances to renovate and expand an existing structure, not to demolish and reconstruct a new one. The judge pointed out that when plaintiffs applied for their variance, their expert testified the "standard [for a variance] was met by the location of the existing home on the lot." After reviewing the transcripts of the hearings before the Board, the judge concluded that the fact the structure on the property would remain was significant to the Board's decision.

Addressing the issue of whether the house had been destroyed, Judge Mendez noted the photographic evidence of the structure made clear "there is no house left." Moreover, the judge determined that the plans plaintiffs dropped

off at the Zoning Officer's office "substantially exceeded Resolution 789-2010, effectively eliminating the structure existing thereon." Noting the undisputed fact that the structure was non-conforming "because it was situated on an undersized flag lot and failed to meet minimum side yard and rear yard setbacks," and relying on common law defining partial and total destruction, Judge Mendez held plaintiffs had totally demolished the property.

Because plaintiffs had demolished the property, and because they could not rebuild it without returning for further zoning approvals, Judge Mendez found the Borough's officials reasonably revoked plaintiffs' zoning permit and issued a stop work order. Judge Mendez also concluded the Zoning Board did not act unreasonably, arbitrarily, or capriciously by upholding the officials' actions.

On appeal, plaintiff argues the following points:

> POINT I
> NO AUTHORITY EMPOWERS INVALIDATION OF A LEGALL [sic] GRANTED AND JUDICIALLY VETTED VARIANCE.
>
> POINT II
> THE ZONING OFFICIAL'S INVALIDATION OF THE VARIANCE AND DIRECTION TO THE CONSTRUCTION OFFICIAL TO STOP THE ONSET OF CONSTRUCTION WAS UNSUPPORTED.

POINT III
THE TRIAL COURT'S DECISION AND SUBSEQUENT BOARD ACTION ARE CONFLICTING AND CONFUSING BECAUSE NO JURISDICTION EXISTS FOR THE DIRECTED RESULT.

"There is no question but that the total destruction of a non-conforming use, whether by design or accident, terminates the use." Cox & Koenig, New Jersey Zoning and Land Use Administration (2018) (citing Hay v. Bd. of Adjustment of Fort Lee, 37 N.J. Super. 461 (App. Div. 1955); Barbarisi v. Bd. of Adjustment, Patterson, 30 N.J. Super. 11 (App. Div. 1954); D'Agostino v. Jaguar Realty Co., 22 N.J. Super. 74 (Ch. Div. 1952); Devito v. Pearsall, 115 N.J.L. 323 (Sup. Ct. 1935)). Regardless of whether total destruction occurs "by the owner's design or by accident," the non-conforming use is terminated as is "the owner's right to continue that use." Motley v. Seaside Park Zoning Bd., 430 N.J. Super. 132, 144 (App. Div. 2013) (quoting S & S Auto Sales, Inc. v. Zoning Bd. of Adjustment, 373 N.J. Super. 603, 619-20 (App. Div. 2004)).

Indisputably, these legal principles apply to a non-conforming structure as well as a non-conforming use. The current relevant statute, N.J.S.A. 40:55D-68, provides that "[a]ny non-conforming use or structure . . . may be restored or repaired in the event of partial destruction thereof." (Emphasis added).

A-4543-16T1

We have previously explained that "the test of whether a non-conforming use or structure may be restored or repaired is whether there has been some quantity of destruction that surpasses mere partial destruction." Motley, 430 N.J. Super. 144-45. On the record before us, the evidence that plaintiffs totally destroyed the structure on their property is unassailable. By the time the Zoning Officer revoked the zoning permit and the Construction Official issued the stop work order, only the structure's original foundation and a wall, or partial wall, remained. Consequently, plaintiffs must do more than construct the renovation for which they received the variance from the Board. They now must reconstruct the entire structure. Plaintiffs' right to continue the non-conforming use having ceased, the variance to expand that non-conforming use is moot.

Plaintiffs' three points on appeal are based on faulty premises. Contrary to plaintiffs' arguments in their first two points, neither the Zoning Officer nor the Construction Official invalidated the variance the Board had granted. Rather, they took appropriate action after plaintiffs submitted new plans that far exceeded the scope of the variance granted by the Board.

Similarly, in their third point, plaintiffs assert "[t]he Zoning Officer declared the variance void and revoked their zoning permit before [construction] could be begun." Once again, plaintiffs mischaracterize the Zoning Officer's

12

action. She did not declare the variance void. Rather, she acted within her authority, as did the Construction Official when he issued the stop work order. See N.J.S.A. 40:55D-18 (authorizing "the proper local authorities of the municipality or an interested party, in addition to other remedies, [to] institute any appropriate action or proceedings to prevent such unlawful erection, construction, reconstruction, alteration, repair, conversion, maintenance, or use, to restrain, correct, or abate" violations of the Municipal Land Use Law, N.J.S.A. 40:55D-1 to -163); Motley, 430 N.J. Super. at 136 ("revers[ing] the trial court's decision to nullify the stop work order because N.J.S.A. 40:55D-68 allows a non-conforming structure to be rebuilt only if it has been 'partially' destroyed.")

Plaintiffs' arguments are without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4543-16T1