IN RE THE MATTER OF LIEUTENANT CHARLES STOWMAN,
CORRECTIONS OFFICER, DEPARTMENT OF CORRECTIONS,
LEESBURG STATE PRISON (DISCIPLINARY GRIEVANCE).

Superior Court of New Jersey
Appellate Division

Argued January 7, 1985—Decided February 20, 1985.

Before Judges KING, DEIGHAN and BILDER.

*Richard Shackleton* argued the cause for appellant (*Shackleton, Hazeltine & Buczynski,* attorneys; *Salvatore D. Depinto,* on the brief).

*Lewis A. Scheindlin,* Deputy Attorney General argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey; *James J. Ciancia,* Assistant Attorney General, of counsel; *Lewis A. Scheindlin,* on the brief).

PER CURIAM.

Appellant Charles Stowman, a lieutenant in the Department of Corrections (Department), assigned to Leesburg State Prison, appeals from a five-day suspension imposed upon him after a departmental hearing. On February 1, 1983, appellant was served with a notice of minor disciplinary action charging him with a violation of administrative regulations involving safety and security. The notice contained the following specification of the charges:

> On 1/18/83 your [sic] turned over an incorrect institution count to the second shift. Approximately 12:10 p.m. it was reported to you by Off. Blystone that inmate Sharme 68446 was discharged and asked you to sign the discharge papers [which you did]. You never dropped him from the master count book nor did you tell Off. Sokolov to drop him from his Unit Count.

Appellant was informed that he would be suspended for five-days.

Appellant appealed the determination and a departmental hearing was held on February 5, 1983. The hearing officer, Lawrence Ashton, sustained the charges against appellant and sustained the five-day suspension. Appellant appealed to this court. We reversed appellant's suspension and remanded for further proceedings because of the absence of evidence that appellant had a continuing duty on the day of the incident to prepare an inmate count report. In an unpublished opinion we stated:

> ... Perhaps Chief Ucci could have cast illumination on the subject, but he preferred to limit his presentation at the hearing to the submission of documentary exhibits, and not to be sworn as a witness. Without testimony from someone as to the precise nature of petitioner's responsibility as to maintaining a correct count, there was nothing in the record to enable the hearing officer to make a knowledgeable finding of fact on the issue.

On remand, the same hearing officer, Lawrence Ashton, conducted another informal hearing.

Chief James Ucci, the deputy keeper of Leesburg State Prison, testified that on January 18, 1983, beginning at 11:30 a.m. appellant was the center keeper. The center keeper supervises the operation of a shift. He receives inmate counts from various areas of the institution and maintains a log showing the number of inmates in the prison. If an inmate is released or enters the prison, it is his responsibility to ensure that this is recorded in the log. At 11:30 a.m. on January 18, 1983, Chief Ucci relieved Lieutenant Parsons, the center keeper, from that duty and told him to have appellant replace him as center keeper. Chief Ucci stated that he went to the center area several times after this and saw appellant acting as center keeper.

From the reports entered into evidence, at 12:10 p.m. on January 18, 1983, while appellant was serving as center keeper, he signed a discharge form for the release of inmate Sharme. Although the 11:30 a.m. count listed Sharme as being out, the 4 p.m. count listed him as present. Sharme had in fact been released, but the count did not reflect this until 8 p.m.

The Department entered into evidence a memorandum from Edward O'Lone, superintendent of the Leesburg State Prison, outlining the duties of a center keeper. Also entered was the interoffice memorandum of Lieutenant Preston Hoffman to Chief Ucci stating that the court log prepared by appellant for his shift on January 18, 1983, did not properly account for inmate Sharme's release.

When the hearing convened on February 23, 1984, appellant's attorney called Lieutenant Hoffman as his first witness and requested that he be sworn. The hearing officer refused to have the witness sworn, and stated it was unnecessary in an administrative hearing. Further, all other witnesses were not sworn. Upon counsel's refusal to present testimony from any witness who was not sworn, the hearing officer terminated the hearing. Ashton issued a decision upholding the charges and sustaining the original sanction.

Appellant contends that the hearing officer erred by refusing to permit appellant to have witnesses sworn thereby denying him due process of law. He also contends that the decision of the hearing officer is not supported by sufficient credible evidence. The latter contention concerning an insufficiency of credible evidence is totally without merit. The decision is supported by sufficient credible evidence on the record as a whole, R. 2:11–3(e)(1)(D). Moreover, the evidence is comprised basically of documents.

In support of his contention that the refusal of the hearing officer to have witnesses sworn under oath, "or otherwise sworn" was in violation of the petitioner's right of due process, appellant relies on decisional and encyclical authority on the

necessity and sanctity of an oath. The authorities cited by appellant are indeed accurate and sound; the only problem we have is that those formalities are required in formal adversarial proceedings and are predicated upon some basic statute or rule. For instance, New Jersey *Evid.R.* 18 requires that a witness before testifying shall take an oath or make an affirmation or declare to tell the truth under the penalty provided by law. This rule has been adopted by statute. *N.J.S.A.* 2A:84A, Rule 18. The same rule has been adopted by the New Jersey Uniform Administrative Procedure Rules, (1980), *N.J.A.C.* 1:1–15.5(b).

▮ There is no statutory right to a civil service hearing for a suspension of five-days. See *Perrapato v. Rose*, 83 *N.J.Super.* 245, 248–249 (App.Div.1964). The Civil Service Act provides for a hearing by the Civil Service Commission only where a classified employee is suspended for more than five-days. *N.J.S.A.* 11:2A–1 and *N.J.S.A.* 11:15–5.

▮ Contrary to appellant's contention unless required by statute, rule or regulation, sworn testimony of witnesses in administrative proceedings need not be taken. In *Amon v. Rahway*, 117 *N.J.L.* 589 (Sup.Ct.1937), a zoning board of adjustment refused to allow witnesses to be sworn. *Id.* at 592. On appeal the Supreme Court commented "the statute does not require that sworn testimony of witnesses be taken." In *Wilson v. Union Township*, 123 *N.J.L.* 474 (Sup.Ct.1939), it was argued that a board of adjustment did not swear in witnesses. Again, the Supreme Court, referring to *Amon* simply stated: "Nor is it necessary that witnesses be sworn in matters of this kind. The statute does not so require." *Id.* at 477.

▮▮ Since appellant is not protected by the Civil Service statutes in this matter, he is entitled to no more than basic fairness at the Department of Corrections' hearing. *Nicoletta v. No. Jersey District Water Supply Commission*, 77 *N.J.* 145 (1978). In the absence of a statutory or contractual right to a formal hearing, it is arguable that appellant did not come within

the scope of due process protection. To establish a constitutional right to a hearing, an aggrieved employee must show that there is a genuine dispute of material fact and that he has a constitutionally protected interest. *In re Crowley*, 193 *N.J. Super.* 197, 209 (App.Div.1985), quoting *Cunningham v. Dept. of Civil Service*, 69 *N.J.* 13, 18–19 (1975).

Nevertheless, even if appellant was entitled to due process protection, he has not shown that he was entitled to have witnesses sworn before testifying at the hearing on the charges against him. In *Nicoletta, supra*, the court observed that among the important elements of a fair hearing is the opportunity to present reasons why the proposed action should not be taken, the right to call witnesses and know the evidence against the alleged offender and to have decisions based only on the evidence presented.

While witnesses may be called, this does not necessarily mean that they must be sworn, as appellant suggests. As stated in *Nicoletta*, "fairness and not rigid formality should be the touchstone." *Ibid.* Procedural requisites vary depending on the importance of the interests involved, with the goal being to minimize the possibility of injustice. *Ibid.*, quoting *Boddie v. Connecticut*, 401 *U.S.* 371, 378, 91 *S.Ct.* 780, 786, 28 *L.Ed.*2d 113 (1971).

*Nicoletta* concluded that the conduct of an informal hearing need not be rigidly structured. Quoting from *Morrissey v. Brewer*, 408 *U.S.* 471, 489, 92 *S.Ct.* 2593, 2604, 33 *L.Ed.*2d 484 (1972), the Court said: " 'the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.' " 77 *N.J.* at 165–166.

The five-day suspension on the basis of a hearing without sworn witnesses does not reach constitutional dimensions. In the landmark case of *Goss v. Lopez*, 419 *U.S.* 565, 95 *S.Ct.* 729, 42 *L.Ed.*2d 725 (1975), it was established that in some circumstances due process does not require trial procedure but forbids

resolving a question of adjudicative fact against a party without first allowing him to respond informally to a summary of adverse evidence. 2 *Davis, Administrative Law Treatise* (2d Ed.1979), § 13:2 at 474–475. In *Goss*, high school students were suspended for up to ten days without a hearing of any kind. The Court then held that due process requires "at least" the rudimentary precautions "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." 419 *U.S.* at 581, 95 *S.Ct.* at 740.

In *Mathews v. Eldridge*, 424 *U.S.* 319, 96 *S.Ct.* 893, 47 *L.Ed.* 2d 18 (1976), the United States Supreme Court held that while due process requires an opportunity for a final determination of disability benefits, a pre-termination trial is not required. In other words, the recipient was entitled to a trial only before benefits could be permanently terminated. 2 *Davis, supra,* § 13:9 at 499.

The Supreme Court held that the opportunity to be heard that Eldridge was given, which was less than a trial, was sufficient. Eldridge had a "hearing" in that he had a chance to know the reasons for the proposed termination and a chance to respond in writing, but he was denied opportunity to present evidence, or argue orally, or to confront and cross-examine witnesses against him. *Id.* at 499–500. This proceeding was constitutionally sufficient even though payments were terminated and the final evidentiary hearing might exceed one year.

Finally, in *Arnett v. Kennedy*, 416 *U.S.* 134, 94 *S.Ct.* 1633, 40 *L.Ed.*2d 15 (1974), a nonprobationary federal employee was discharged solely on written charges against him. The Federal Statute, 5 *U.S.C.* § 7501, provided only that he was entitled to a written notice with a copy of the charges, a reasonable time to answer and a written decision on the answer. Examination of witnesses, trial on hearing was not required but may be provided in the discretion of the person removing the employee. The

discharged employee asserted he had a right to a trial-type hearing before an impartial hearing officer before he could be removed. The United States Supreme Court held that the act did not violate procedural due process by failing to require a trial-type hearing before, rather than after, the employee's removal.

If under *Goss,* a student was suspended from school for 10 days without a hearing; under *Mathews* a disability benefit recipient was not entitled to a hearing pending a formal determination before benefits were permanently terminated, and under *Arnett* a nonprobationary federal employee was discharged without a hearing, then a suspension of appellant in the present proceedings for five-days *with a hearing* but without witnesses being sworn would a *fortiori* pass constitutional muster. Appellant's contention in this respect is totally without merit.

Lastly, appellant argues that in our first decision in this case we imposed an obligation on the hearing officer to swear in witnesses. He contends that language in the original opinion from this court remanding this case for a further hearing was the "law of the case", mandating that witnesses be sworn. Appellant relies on a statement in the last paragraph of our opinion in which we stated: "Perhaps Chief Ucci could have cast illumination on the subject (of appellant's duties), but he preferred to limit his presentation at the hearing to the submission of documentary exhibits, *and not to be sworn as a witness.*" From this appellant argues that we have already held that witnesses must be sworn.

Appellant misconstrues the significance of our observation. The basis for the remand was to establish the deficiency in the record concerning the factual basis of the appellant's responsibility. In context the quoted passage refers to the necessity of the presentation of evidence on appellant's duties before determining that he had acted improperly. We merely referred to the preference of Chief Ucci; in no way did we direct that

witnesses be sworn. The question of whether it was necessary to have witnesses sworn was not presented on the first appeal. Since we did not address the question our statement which appellant takes out of context cannot be considered the law of the case. Moreover, we note that, for the most part, the factual basis for the suspension of the appellant is documented by unsworn statements introduced into evidence.

Affirmed.